# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP894

†Petition for Review filed

Complete Title of Case:

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T. L. E.-C.,
A PERSON UNDER THE AGE OF 18:

EAU CLAIRE COUNTY DEPARTMENT OF HUMAN SERVICES,

   PETITIONER-RESPONDENT,

V.

S. E.,

   †RESPONDENT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | May 13, 2020 |
| Submitted on Briefs: | September 18, 2019 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Seidl, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Thomas B. Aquino*, assistant public defender of Madison. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Sharon G. McIlquham*, assistant corporation counsel, Eau Claire. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### May 13, 2020

Sheila T. Reiff
Clerk of Court of Appeals

## NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2019AP894**

Cir. Ct. No. 2018TP10

STATE OF WISCONSIN

IN COURT OF APPEALS

IN RE THE TERMINATION OF PARENTAL RIGHTS TO T. L. E.-C.,
A PERSON UNDER THE AGE OF 18:

EAU CLAIRE COUNTY DEPARTMENT OF HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

S. E.,

RESPONDENT-APPELLANT.

APPEAL from order of the circuit court for Eau Claire County: EMILY M. LONG, Judge. *Affirmed.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1    HRUZ, J.  Sophie[1] appeals a nonfinal order in this termination of parental rights (TPR) case.[2]  That order denied Sophie's motion asking the circuit court to determine that the Eau Claire County Department of Human Services (the Department) must prove the elements of the continuing CHIPS ground for a TPR as previously set forth in WIS. STAT. § 48.415(2)(a) (2015-16), as opposed to the elements now set forth in § 48.415(2)(a) (2017-18).[3]

¶2    In June 2016, Sophie's son, Tyler, was placed outside of her home. In August 2016, the circuit court entered a CHIPS order, and Tyler's placement continued with the issuance of subsequent CHIPS orders.  At the initial out-of-home placement hearing and at four subsequent permanency plan review hearings, the court, as required by statute, gave Sophie written and oral notice that her parental rights could be terminated pursuant to the continuing CHIPS ground.  As relevant here, that ground previously required the Department to prove there was a substantial likelihood that Sophie would not meet the conditions established for the return of Tyler to her home within nine months following a TPR fact-finding hearing.  *See* WIS. STAT. § 48.415(2)(a)3. (2015-16).

---

[1] For ease of reading, we refer to S.E. and her son, T.L.E.-C., using pseudonyms, rather than by their initials.

[2] By this court's June 26, 2019 order, we granted Sophie leave to appeal a nonfinal order. *See* WIS. STAT. § 808.03(2) (2017-18).  This appeal was converted from a one-judge appeal to a three-judge appeal by the December 16, 2019 order of the Chief Judge of the Court of Appeals. *See* WIS. STAT. § 752.31(3) (2017-18); WIS. STAT. RULE 809.41(3) (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[3] We follow the lead of the parties and prior case law by referring to WIS. STAT. § 48.415(2)(a) as the "continuing CHIPS" ground for the termination of parental rights. *See, e.g.*, *St. Croix Cty. DHHS v. Michael D.*, 2016 WI 35, ¶1, 368 Wis. 2d 170, 880 N.W.2d 107.  "CHIPS" is a commonly used acronym for "child in need of protection or services." *See id.*, ¶6.  Also, for ease of reading and consistency with prior case law, we refer to WIS. STAT. § 48.415(2)(a) (2015-16) as the "prior version," and to § 48.415(2)(a) (2017-18) as the "amended version." *See **Dane Cty. DHS v. J.R.***, 2020 WI App 5, ¶2 n.3, 390 Wis. 2d 326, 938 N.W.2d 614 (2019).

¶3     Our legislature changed the continuing CHIPS ground's elements in April 2018 when it passed 2017 Wis. Act 256, § 1, which amended WIS. STAT. § 48.415(2)(a)3. (2015-16).  The amended version eliminated a prospective analysis under the continuing CHIPS ground for a TPR if the child had already been placed outside the parent's home for at least "15 out of the most recent 22 months."  *Compare* § 48.415(2)(a)3. (2015-16), *with* § 48.415(2)(a)3. (2017-18).   A few months after the amendment took effect, the Department petitioned to terminate Sophie's parental rights based on the continuing CHIPS ground.  The petition stated the continuing CHIPS elements set forth by the amended version of the statute.

¶4     Sophie asserts the amended version of WIS. STAT. § 48.415(2)(a) should not be used as a basis to terminate her parental rights because the notice she was given when the CHIPS orders were first issued included the continuing CHIPS elements set forth in the prior version of the statute.  For the reasons set forth, we disagree.  In Sophie's TPR proceedings, the circuit court must employ the current, amended version of § 48.415(2)(a).  We also disagree with Sophie that applying the amended version of the statute to her circumstances violates her constitutional rights to due process.  We therefore affirm the order of the circuit court.

**BACKGROUND**

¶5     The following facts are undisputed.  In June 2016, then-three-year-old Tyler was removed from Sophie's home pursuant to a temporary physical custody order.  On August 17, 2016, Tyler was found to be a child in need of protection or services.  Written notice of potential grounds for termination of Sophie's parental rights was provided to her with that CHIPS order, as required by WIS. STAT. § 48.356(2).  Presumably, the CHIPS order listed continuing CHIPS as one of the

3

potential TPR grounds.[4]  Effective April 6, 2018, the legislature changed one of the elements of the continuing CHIPS ground by amending WIS. STAT. § 48.415(2)(a)3. *See* 2017 Wis. Act 256, § 1.  This change is explained further below.

¶6      In June 2018, the Department petitioned for involuntary termination of Sophie's parental rights to Tyler, alleging the ground of abandonment.  In September 2018, the Department filed an amended TPR petition, alleging two grounds for termination:  (1) abandonment; and (2) continuing CHIPS.  *See* WIS. STAT. § 48.415(1)(a)2., (2)(a).  Both parties appear to agree that another CHIPS order was issued in October 2018 that included TPR warnings referring to the amended version of WIS. STAT. § 48.415(2)(a), although that order is not in the appellate record.

¶7      In April 2019, prior to a trial in the grounds phase, the parties disputed whether the TPR case should proceed under the prior or the amended version of the continuing CHIPS statute.  Sophie argued that the prior version should apply, whereas the Department and Tyler's guardian ad litem argued in favor of the

---

[4] Both parties agree that Sophie received the TPR warnings as required by statute in 2016, but neither the August 2016 nor subsequent CHIPS orders are in the record on appeal.  While the CHIPS orders would have aided our review of this case, their absence does not foreclose our review of the issues on appeal.

We further note that the Department's statement of the case in its response brief has only one citation to the appellate record.  The Department's violations of WIS. STAT. RULES 809.19(1)(d) and 809.19(3)(a)2. are problematic and have unnecessarily hindered our review of Sophie's appeal.  In addition, the Department's brief refers repeatedly to matters in the CHIPS action involving Sophie, even though most records of the CHIPS action are not part of the appellate record in this TPR action.  These omissions further violate RULES 809.19(1)(d) and 809.19(3)(a)2.  We admonish the Department that future violations of the rules of appellate procedure may result in sanctions.

amended version. On May 6, 2019, the circuit court determined that the case would proceed under the amended version. Sophie now appeals.[5]

## DISCUSSION

¶8      When our legislature amended WIS. STAT. § 48.415(2)(a)3. in April 2018, it changed the elements that the Department must prove at the grounds phase of a TPR proceeding. The prior version of subdivision 3. required the petitioner to show, among other things, that there was a "substantial likelihood" that the parent would not meet "the conditions established for the safe return of the child to the home" within "the 9-month period following the fact-finding hearing." We have previously referred to this requirement, which assesses the prospective likelihood of the child's return, as the "9-month failure to meet requirement." *See Dane Cty. DHS v. J.R.*, 2020 WI App 5, ¶13, 390 Wis. 2d 326, 938 N.W.2d 614 (2019).

¶9      Our legislature eliminated the 9-month failure to meet requirement when it amended WIS. STAT. § 48.415(2)(a)3. *See* 2017 Wis. Act 256, § 1. Subdivision 3. now provides:

> [I]f the child has been placed outside the home for less than 15 of the most recent 22 months, [the petitioner must show] that there is a substantial likelihood that the parent will not meet the[] conditions [established for the safe return of the child to the parent's home] as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

---

[5] After briefing concluded in this matter, we issued our decision in *J.R.* That decision was not initially recommended for publication, but it has since been published. Sophie submitted a letter, consistent with WIS. STAT. RULE 809.19(10), asserting, among other things, that the "facts and holdings" of *J.R.* are distinct from the issues in her case.

Sec. 48.415(2)(a)3. Following Sophie's lead, we generally refer to this "amended" period as the "15-out-of-22-month timeframe."

¶10 Sophie does not request dismissal of the TPR petition altogether. Instead, she argues the Department should not be able to rely on the amended version of WIS. STAT. § 48.415(2)(a) to terminate her parental rights.[6] Rather, she contends the Department should proceed under the prior, 9-month failure to meet requirement. Sophie generally makes three different arguments in this regard. She argues, first, that use of the amended version would be an impermissible retroactive application of the statute, and, second, that such an application would violate her due process rights. Third, she argues, as a matter of statutory construction, that if the amended statute applies in her TPR proceeding, the 15-out-of-22-month

---

[6] In her supplemental letter to this court addressing *J.R.*, Sophie "clarifie[d] that she is not arguing that the [Department] *must* have pursued a TPR under the old law, but that it *could* have." She faults the Department for waiting until WIS. STAT. § 48.415(2)(a)3. was amended in April 2018 before petitioning for a TPR when the Department's "cause of action accrued in February of 2017," and she contends "that the cause of action survived the April 2018 amendments" under WIS. STAT. § 990.04. This "clarification" is problematic for a few reasons.

First, if Sophie intended her clarification only to bolster an argument as to why WIS. STAT. § 990.04 applies in her case, that argument is developed for the first time outside of her brief-in-chief, and it is minimally developed at best. We generally do not consider such arguments. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998). Additionally, we previously decided in *J.R.* that § 990.04 does not require application of the prior version of WIS. STAT. § 48.415(2)(a). *J.R.*, 390 Wis. 2d 326, ¶¶19-27. For reasons explained further in this opinion, we disagree with Sophie's assertion that material distinctions exist between her case and the parent in *J.R.*

Second, if Sophie intended her clarification to more generally bolster her appellate arguments regarding the validity of the circuit court's use of the amended version of the statute, the clarification is inconsistent with her arguments in her appellate briefs. In those briefs, Sophie repeatedly advocates that the Department "must" have pursued a TPR under the prior version of WIS. STAT. § 48.415(2)(a). In any event, whether Sophie is arguing that the Department must have, could have, or should have pursued a TPR under the prior version of the statute is immaterial because, for the reasons set forth in our opinion, we reject all of Sophie's arguments.

timeframe period can only begin with a CHIPS order including notice of that time period limitation. We addressed the first two issues she raises in our recent decision in *J.R.*, and we begin with those arguments.[7]

*I. Retroactivity*

¶11 Sophie makes two separate, but related, arguments asserting that if the amended version of WIS. STAT. § 48.415(2)(a) were employed, it would be an impermissible retroactive application of the statute. She maintains that as a matter of statutory interpretation, statutes must be "construed to avoid retroactive application of a substantive change in the law." Here, she contends the amended version would impair her right to parent her child—which she contends is a vested right. Relatedly, Sophie also argues that a retroactive application of the amended version would violate her rights to due process because it would deprive her of a constitutionally protected right to parent her child without "fair notice."

¶12 The critical question, therefore, is whether employing the amended version of WIS. STAT. § 48.415(2)(a) in the current posture of Sophie's TPR case is actually a retroactive application of that statute. The interpretation and application of a statute present questions of law that we review de novo. *Brown Cty. Human Servs. v. B.P.*, 2019 WI App 18, ¶10, 386 Wis. 2d 557, 927 N.W.2d 560. Similarly, we review de novo whether a legislative act violates due process. *Neiman v. American Nat'l Prop. & Cas. Co.*, 2000 WI 83, ¶8, 236 Wis. 2d 411, 613 N.W.2d 160; *see also J.R.*, 390 Wis. 2d 326, ¶51 ("Whether a statute, as applied, violates

---

[7] We wish to make clear that we offer no opinion on whether the Department has proven the continuing CHIPS ground in this case; that role is for the fact finder at the grounds phase of Sophie's TPR proceedings. *See Sheboygan Cty. DHHS v. Julie A.B.*, 2002 WI 95, ¶24, 255 Wis. 2d 170, 648 N.W.2d 402. This interlocutory appeal occurred prior to the trial in the grounds phase and concerns only the statutory standard that must be applied in any ensuing trial.

the challenger's constitutional rights is a question of law this court reviews de novo.").

¶13 Sophie's arguments are nearly identical to those raised by the parent in *J.R.* Similar to Sophie, J.R.'s children were placed outside of his home pursuant to CHIPS orders that were issued before the legislature amended WIS. STAT. § 48.415(2)(a). *See J.R.*, 390 Wis. 2d 326, ¶5. After the amended version went into effect, the Dane County Department of Human Services petitioned for an order terminating J.R.'s parental rights to his children. *Id.*, ¶7. On appeal, J.R. argued that if the amended version was utilized during his TPR proceedings, it would constitute a retroactive application of that statute and thereby violate his due process rights. *Id.*, ¶¶28-30. We explained that courts use a two-step test to determine whether a statute operates retroactively. *See id.*, ¶30.

¶14 Relevant to Sophie's arguments in this case, the second step of the retroactivity analysis requires us to determine whether the amended version of WIS. STAT. § 48.415(2)(a) does, in fact, operate retroactively, notwithstanding the absence of any legislative directive regarding retroactivity. *J.R.*, 390 Wis. 2d 326, ¶¶32, 44. We concluded the application of the amended version of § 48.415(2)(a) in a TPR case was not retroactive when CHIPS proceedings began before the legislature amended the continuing CHIPS ground.[8] *J.R.*, 390 Wis. 2d 326, ¶¶30-32, 41, 44, 50.

---

[8] Sophie appears to misunderstand when a statute truly operates "retroactively." It is true that the facts underlying the continuing CHIPS ground are based on Sophie's conduct that occurred before the legislature amended WIS. STAT. § 48.415(2)(a)3. A statute does not, however, operate retroactively "simply because it is applied in a case arising from conduct antedating the statute's enactment." *J.R.*, 390 Wis. 2d 326, ¶44 (citation omitted). Merely because Sophie labels the application of the amended statute in this case as "retroactive" does not make it so.

¶15    Sophie also argues the amended version of WIS. STAT. § 48.415(2)(a) operates retroactively because she has a "fundamental right to parent" her child, and if the amended version of § 48.415(2)(a) is used in her case, its "retroactive application would impair [her] vested rights." This argument, however, was addressed in—and now foreclosed by—our decision in **J.R.**, the relevant facts of which are not materially different than here, including on the issue of the effect on one's parental rights.[9]  We are generally bound by our own published precedent. *See **Cook v. Cook***, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997).  Given our binding precedent in **J.R.**, we therefore reject Sophie's claim that using the amended version of § 48.415(2)(a) would impermissibly make the statute operate retroactively.

## II. Additional Due Process Arguments

¶16    Sophie argues the purported "retroactive application" of the amended version of WIS. STAT. § 48.415(2)(a) in her TPR proceedings "violates [her] due process rights" in other ways.  In doing so, Sophie makes an "as-applied" due process challenge, maintaining that if the amended version of § 48.415(2)(a) is used,

---

[9] Specifically, in **J.R.**, we called into question the same premise Sophie now advances—i.e., that the "fundamental liberty interest" of a parent "is the same" as a "vested right" regardless of the existing relationship between the parent and child. *See **J.R.***, 390 Wis. 2d 326, ¶48 (citing **Tammy W-G. v. Jacob T.**, 2011 WI 30, ¶52, 333 Wis. 2d 273, 797 N.W.2d 854 ("Parents *who have developed a relationship with their children* have a fundamental liberty interest in the 'care, custody, and control of their children.'" (emphasis added and citation omitted)); and **Monroe Cty. DHS v. Kelli B.**, 2004 WI 48, ¶23, 271 Wis. 2d 51, 678 N.W.2d 831 (holding that a parent with a "substantial relationship" with his or her child has a "fundamental liberty interest" in parenting)). Similar to J.R., Sophie does no more than assume that her recognized fundamental liberty interest as a parent is the same as a "vested right," regardless of the underlying fact that her child had been removed from her home and found to be in need of protection or services.

she would be subject to fundamentally unfair procedures, including the lack of fair notice.[10]

¶17 Due process is implicated in TPR proceedings because when "the State moves to destroy weakened familial bonds, it must provide parents with fundamentally fair procedures." *Steven V. v. Kelley H.*, 2004 WI 47, ¶23, 271 Wis. 2d 1, 678 N.W.2d 856 (quoting *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)). The State provides fundamentally fair procedures by providing parents a hearing, prescribing the petitioner's burden of proof as "clear and convincing evidence," *id.*, and providing fair notice of any substantive change to a parent's conduct that could lead to a TPR, *see State v. Patricia A.P.*, 195 Wis. 2d 855, 863, 537 N.W.2d 47 (Ct. App. 1995).

¶18 As was the case with the parent in *J.R.*, Sophie's as-applied due process challenge is premised on—and derivative of—her contention that the amended version of WIS. STAT. § 48.415(2)(a) has retroactive application to her TPR proceedings. *See J.R.*, 390 Wis. 2d 326, ¶52. As just explained, this court has already concluded that applying the amended version to Sophie's case is not an improper retroactive application of the statute.

¶19 Further, *J.R.*'s rejection of the parent's as-applied challenge in that case is binding precedent here because there are no material factual differences between Sophie and J.R. Both parents had children placed outside of their

---

[10] WISCONSIN STAT. § 893.825(1) and (2) require that when a statute is alleged to be unconstitutional, the attorney general, speaker of the assembly, president of the senate and senate majority leader shall be served with a "copy of the proceeding," and the attorney general, assembly, senate, and joint committee on legislative organization shall be entitled to be heard in that action. The effective date of § 893.825 was December 16, 2018, which was after the Department petitioned to terminate Sophie's parental rights. *See* 2017 Wis. Act 369, § 101. Nonetheless, Sophie provided a copy of her brief-in-chief to those entities, and none of them entered an appearance in the matter.

respective homes pursuant to CHIPS orders issued before the legislature amended WIS. STAT. § 48.415(2)(a). *See **J.R.***, 390 Wis. 2d 326, ¶5. Those CHIPS orders and subsequent CHIPS orders continuing the children's placement outside of the home each contained the required written notice of potential grounds for a TPR. *See **id.*** The CHIPS orders J.R. received before § 48.415(2)(a) was amended had listed continuing CHIPS, generally, as a potential ground for TPR, ***J.R.***, 390 Wis. 2d 326, ¶5, and there is nothing in the record indicating—nor does Sophie claim—that something different occurred in her case. Likewise, CHIPS orders were issued in both cases after the amended statute went into effect, and those orders included notice of the amended continuing CHIPS ground.[11] *See **id.***, ¶6. The respective petitioners in each case petitioned for TPR after the legislature amended § 48.415(2)(a)3., ultimately alleging continuing CHIPS as a ground for TPR. *See **J.R.***, 390 Wis. 2d 326, ¶5. In all, we conclude our holding in ***J.R.*** that the application of the amended version of § 48.415(2)(a) did not violate J.R.'s due

---

[11] In Sophie's supplemental letter to this court, she contends she "has a much stronger due process notice argument than J.R." because the first CHIPS order that gave her notice of the amended continuing CHIPS ground and its corresponding statutory elements was issued after the Department petitioned to terminate her parental rights. Conversely, in J.R.'s case, CHIPS orders were issued with the updated warnings in before Dane County initiated TPR proceedings. ***J.R.***, 390 Wis. 2d 326, ¶6.

Sophie's argument is unpersuasive because she does not explain *why* this distinction makes a difference. In any event, we also disagree that she has a "stronger" due process challenge under her factual circumstances, primarily because there is not a substantial change in the type of conduct that may lead to a TPR between the prior version and the amended version of WIS. STAT. § 48.415(2)(a)3. What matters is that the child has been placed outside of the home in need of protection or services for an extended period of time. *See infra*, ¶¶22-23.

process rights applies with equal force to Sophie.[12]  *See **J.R.***, 390 Wis. 2d 326, ¶¶51-52.  Her due process arguments therefore lack merit.

¶20     Although our decision in ***J.R.*** is arguably dispositive of Sophie's due process argument, we address an argument she raises regarding due process that J.R. did not.    Sophie argues that applying the amended version of WIS. STAT. § 48.415(2)(a)3. violates her right to procedural due process under our decision in ***Patricia A.P.***  In that case, we held that when a parent is warned his or her parental rights to a child may be lost because of the parent's future conduct, "if the State *substantially changes the type of conduct* that may lead to the loss of rights without notice to the parent, the State applies a fundamentally unfair procedure."  ***Patricia A.P.***, 195 Wis. 2d at 863 (emphasis added).  Sophie contends such a "substantial change" occurred here and she was not given "fair notice" of that substantial change. We disagree.

¶21     In ***Patricia A.P.***, we observed that the legislature changed the "*quality* of the very nature of the acts leading to termination."  ***Id.*** at 864 (emphasis added).

---

[12]  In ***J.R.***, we observed that one of the flaws in J.R.'s arguments was that he did not show that Dane County would "be able to establish the continuing CHIPS ground in the TPR proceeding under the amended version of [WIS. STAT.] § 48.415(2)(a)3. but not under the prior version."  ***J.R.***, 390 Wis. 2d 326, ¶53.  The same holds true for Sophie here.

Sophie alleges that "applying the new version of [WIS. STAT.] § 48.415(2)(a)3. to [her] and parents like her whose children were placed out of home under CHIPS orders entered prior to the enactment of the new statute violates procedural due process" and that she had a "settled expectation that she would be able to present argument as to the 9-month-forward-looking element should the government attempt to terminate her rights."  However, Sophie presents no facts demonstrating that the Department is able to meet its burden of proof under the amended version of § 48.415(2)(a) but could not do so under the prior version.  *See **J.R.***, 390 Wis. 2d 326, ¶53. Sophie consequently "has not demonstrated that application of the prior version of … § 48.415(2)(a), as compared to application of the amended version of § 48.415(2)(a) would make a difference" to the result in her TPR proceedings.  *See **J.R.***, 390 Wis. 2d 326, ¶53 (citing ***Society Ins. v. LIRC***, 2010 WI 68, ¶27 n.9, 326 Wis. 2d 444, 786 N.W.2d 385; and ***State v. Wood***, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63).

The old version of the continuing CHIPS ground at issue in that case provided that a parent would lose his or her parental rights "only for culpable conduct—substantial neglect or willful refusal—or for inability to meet the conditions established for the return of the child." *Id.* (citing WIS. STAT. § 48.415(2)(c) (1991-92)). The new version, by contrast, required "no showing of neglect, willfulness or inability." *Id.* Instead, a parent faced termination of rights if he or she "failed to demonstrate substantial progress toward meeting the conditions established for the return of the child." *Id.* (quoting WIS. STAT. § 48.415(2)(c) (1993-94)).

¶22 Here, the legislature's amendment of WIS. STAT. § 48.415(2)(a)3. did not substantially change the type of conduct that may lead to a TPR under para. (2)(a). Similarly, the amended version of the statute did not change the "quality of the very nature of the acts" that could lead to the termination of Sophie's parental rights. *See Patricia A.P.*, 195 Wis. 2d at 864. Both versions of the statute relate to circumstances involving: (1) a child in need of protection or services being placed outside of the parent's home for an extended period of time; (2) the responsible agency having made a reasonable effort to provide the services ordered; and (3) the parent's ability to meet the conditions for the child's return. *Compare* § 48.415(2)(a) (2015-16), *with* § 48.415(2)(a) (2017-18). That the amended version narrowed the scenarios by which a parent must progress toward meeting conditions of return does not change the fact that these are the three circumstances subjecting a parent to a TPR based on continuing CHIPS.

¶23 In other words, the change between the prior version and the amended version of the statute is not substantive, including in the sense articulated in *Patricia*

13

*A.P.*[13] Whereas the prior version required a prospective determination of whether a parent was likely to meet the conditions for return of the child within the nine months following the fact-finding hearing, the amended version eliminates the need for a prospective analysis as long as the child has already been outside the parent's home for "15 of the most recent 22 months." *Compare* WIS. STAT. § 48.415(2)(a)3. (2015-16), *with* § 48.415(2)(a)3. (2017-18). In cases where the out-of-home placement has already satisfied the 15-out-of-22-month timeframe, the amended statute merely requires the petitioner to prove that the parent has failed to meet the conditions for the safe return of the child. *See* § 48.415(2)(a)3. (2017-18). Under both versions of the statute, however, the conduct at issue is the same—the parent's ability or inability to meet the conditions for return of the child during an extended period of time—and, under both versions, the child must have been placed outside of the parent's home for at least six months. Thus, the legislature's amendment of § 48.415(2)(a)3. did not substantially change the type of conduct that may lead to the termination of Sophie's parental rights.

¶24 Relatedly, Sophie also argues—vaguely and without citation to authority—that the change between the prior and the amended version of WIS. STAT. § 48.415(2)(a)3. violated her procedural due process right to "fair notice" because she "had a settled expectation that she would be able to present argument as to the 9-month forward-looking element should the government attempt to terminate her rights." In other words, Sophie maintains that even if Tyler has already long been

---

[13] Notably, we observe that this change makes the amended version of WIS. STAT. § 48.415(2)(a)3. mirror the procedural timeframe in WIS. STAT. § 48.417(1)(a), which provides that a state or county actor is required to file a TPR petition regarding a child who has been placed outside the home pursuant to a CHIPS order "for 15 of the most recent 22 months."

outside of her home, she still must have some time to remedy her failures to secure his return after the Department filed the TPR petition.

¶25    Sophie's argument lacks merit because she has not shown that her "settled expectation" to make or prove a particular argument is, in fact, a due process right.  As best we can discern, her argument in this regard is dependent on her foregoing attempted application of ***Patricia A.P.*** to her circumstances, which we have just rejected.  In short, Sophie has no due process right to have her parental rights terminated under a particular set of elements that satisfies the TPR ground of continuing CHIPS.[14]

*III.  Statutory Interpretation*

¶26    Finally, Sophie raises a statutory interpretation argument we did not address in ***J.R.*** and that is distinct from her retroactivity and due process arguments. She asserts that under the plain meaning of the amended version of WIS. STAT. § 48.415(2)(a)3., "the 15-out-of-22 month timeframe begins with the CHIPS order including the 15-out-of-22 month warning, not a prior order that does not include the warning."

¶27    Relevant to this case, the circuit court issued a CHIPS order in August 2016, and that order included TPR warnings referencing the prior version of WIS. STAT. § 48.415(2)(a).  After the legislature amended the continuing CHIPS ground in April 2018, the Department filed an amended TPR petition alleging continuing

---

[14]  In ***J.R.***, we observed that J.R. had not explained "how or why the changes made in the amended version of the statute, in themselves, take away his purported right to parent." ***J.R.***, 390 Wis. 2d 326, ¶49.  That comment applies with equal force here.  The critical point is that, at all times, Tyler was lawfully found to be a child in need of protection or services, and each CHIPS order properly provided Sophie with written notice of that circumstance being a potential ground for the termination of her parental rights, as that ground's elements were prescribed by statute when the CHIPS order was issued.

CHIPS in September 2018. Then, in October 2018, the court issued a new CHIPS order that included TPR warnings referencing the amended version of § 48.415(2)(a) and the elements that the Department needed to prove under that version. In Sophie's view of the relevant statutory provisions, the "15-out-of-22-month timeframe cannot begin with the August 2016 CHIPS order," but, rather, must begin in October 2018 when a CHIPS order was first issued including the TPR warnings referencing the amended version of the statute.

¶28 Our canons of statutory interpretation are well known and need not be repeated here. *See, e.g.*, **B.P.**, 386 Wis. 2d 557, ¶10 (citing **State ex rel. Kalal v. Circuit Court for Dane Cty.**, 2004 WI 58, ¶¶44-49, 271 Wis. 2d 633, 681 N.W.2d 110). As relevant to Sophie's arguments, however, we note that we give statutory language its common, ordinary and accepted meaning, and we cannot read language into a statute that does not exist in the statute's text. *See id.*

¶29 The plain meaning of the amended version of Wɪs. Stᴀt. § 48.415(2)(a) permits its use as a ground for termination in Sophie's circumstances. In particular, § 48.415(2)(a)3.'s language does not support Sophie's interpretation that the 15-out-of-22-month timeframe could not have begun at the issuance of the August 2016 CHIPS order.

¶30 As relevant to Sophie's arguments, the amended version of the statute provides that the continuing CHIPS ground "shall be established" if the Department can prove:

> 1. That the child has been adjudged to be a child … in need of protection or services and placed, or continued in a placement, outside his or her home pursuant to one or more court orders … containing the notice required by s. 48.356(2) ….
>
>   ….

> 3. That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1., not including time spent outside the home as an unborn child; that the parent has failed to meet the conditions established for the safe return of the child to the home; and, if the child has been placed outside the home for less than 15 of the most recent 22 months, that there is a substantial likelihood that the parent will not meet these conditions as of the date on which the child will have been placed outside the home for 15 of the most recent 22 months, not including any period during which the child was a runaway from the out-of-home placement or was residing in a trial reunification home.

WIS. STAT. § 48.415(2)(a)1., 3. Subdivision 3. requires the Department to prove that a child has been placed outside of his or her parent's home pursuant to an order listed in subdivision 1., and one of those enumerated orders is a CHIPS order. There is no dispute that such placement occurred in this case.

¶31 WISCONSIN STAT. § 48.415(2)(a)1., in turn, requires that the CHIPS order contain the "notice" required by WIS. STAT. § 48.356(2), a subsection of the CHIPS proceedings provisions within the Children's Code. Section 48.356(2) must be read in conjunction with § 48.356(1), and together they state:

> **(1)** Whenever the court orders a child to be placed outside his or her home, … the court shall orally inform the parent or parents who appear in court … of any grounds for termination of parental rights under s. 48.415 which may be applicable and of the conditions necessary for the child … to be returned to the home or for the parent to be granted visitation.
>
> **(2)** In addition to the notice required under sub. (1), any written order which places a child … outside the home or denies visitation under sub. (1) shall notify the parent or parents … of the information specified under sub. (1).

¶32 Reading WIS. STAT. § 48.356 in conjunction with WIS. STAT. § 48.415(2)(a)1. and 3., the plain meaning of these statutory provisions permits use of the amended version of § 48.415(2)(a) in Sophie's TPR proceedings. Nothing

17

within §§ 48.356 or 48.415(2)(a) prohibits a TPR petitioner from relying on a CHIPS order issued before the legislature amended § 48.415(2)(a)3., regardless of the nature of the continuing CHIPS warnings regarding a potential TPR contained in that order. What matters is the parent having been warned that his or her parental rights could be terminated on the basis of a continuing CHIPS—a child being protectively placed outside of the parent's home for an extended period of time.

¶33    To explain, what the continuing CHIPS ground requires, under either the prior or amended version of the statute, is *a* valid CHIPS order having been issued under the CHIPS statutes and in compliance with the "duty of court to warn" provisions found in WIS. STAT. § 48.356. Once proof of these requirements has been satisfied, the fact finder then independently assesses whether the petitioner has proven the remaining statutory elements for a TPR due to a continuing CHIPS.[15] The amended version of WIS. STAT. § 48.415(2)(a) contains no language prohibiting a TPR petitioner from relying on a valid CHIPS order issued before the amended version's effective date when attempting to prove the continuing CHIPS ground during the grounds phase of a TPR proceeding.

¶34    Sophie argues the references in WIS. STAT. § 48.415(2)(a)1. and 3. to WIS. STAT. § 48.356's "duty of court to warn" provision "provide[] that the initial

---

[15] That means the fact finder must generally determine: (1) whether the agency responsible for the child's care has made a "reasonable effort" to provide the services ordered by the circuit court, *see* WIS. STAT. § 48.415(2)(a)2.b.; (2) the parent "has failed" to meet the conditions established for the child's safe return, *see* § 48.415(2)(a)3.; (3) the child "has been placed outside the home for a cumulative total period of 6 months or longer," *id.*; (4) whether the child has been placed outside the home "for less than 15 of the most recent 22 months," *id.*; and (5) if the child has been placed outside the home "for less than 15 out of the most recent 22 months," whether there is a "substantial likelihood" the parent will not meet the conditions for the child's return as of the date on which the child will have been placed outside the home "for 15 out of the most recent 22 months," *id.* Given that it appears undisputed Tyler had been already placed outside of the home for more than "15 out of the most recent 22 months" by the time the Department filed the TPR petition, it appears only the first and second elements described above may be in dispute.

18

6[-]month waiting period begins with an order including the 15-out-of-22-month notice" and, therefore, a CHIPS order "that does not include this 'ground[] for termination' does not have the notice required of an order under Subdivision 1." Sophie's argument lacks merit for a few reasons.

¶35     To begin, she confuses a TPR ground with its corresponding elements. "Section 48.415(2) makes the written notice in the CHIPS statute, WIS. STAT. § 48.356(2), an element to prove in a TPR case grounded in continuing CHIPS to ensure that a parent whose rights are being terminated has—at least once—received written notice to that effect." *See St. Croix Cty. DHHS v. Michael D.*, 2016 WI 35, ¶17, 368 Wis. 2d 170, 880 N.W.2d 107.  The 15-out-of-22-month timeframe, however, is not one of the twelve TPR grounds provided by statute; rather, it is one of the elements a petitioner must prove if it alleges a parent's rights should be terminated under para. (a) of the continuing CHIPS ground for a TPR.

¶36     Again, WIS. STAT. §§ 48.356 and 48.415(2)(a) require only that a parent be given notice of which TPR *grounds* may be used to terminate his or her parental rights.  Section 48.415 enumerates only twelve grounds for TPR. *See* WIS. STAT. § 48.415(1)-(10).   Each ground, in turn, has elements "that shall be established" by the petitioning party, *id.*, but these elements are not the TPR grounds themselves.[16]  Accordingly, for Sophie's argument to be correct, she must read

---

[16] To be sure, the duty to warn prescribed by WIS. STAT. § 48.356—which we acknowledge includes the requirement that the parent be informed "of the conditions necessary for the child … to be returned to the home"—serves a necessary function within TPR proceedings. But the duty to warn is not an element of the continuing CHIPS ground beyond the fact that the applicable CHIPS order(s) must have contained such a warning. *See* WIS. STAT. § 48.415(2)(a)1. A parent's notification of the conditions for return of the child and the grounds under which his or her parental rights might be subject to termination dictate the validity of the CHIPS order itself and of the CHIPS proceedings. The notice given under the duty-to-warn provision does not, in and of itself, limit the ability for a petitioner to rely on a particular set of elements for the continuing CHIPS ground.

language requiring notice of a particular TPR ground's elements into the statutes, which contravenes a cardinal rule of statutory interpretation. *See **State v. Hinkle***, 2019 WI 96, ¶24, 389 Wis. 2d 1, 935 N.W.2d 271.

¶37 Sophie also conflates the petitioner's and the circuit court's procedural obligations under the TPR statute with the substantive elements a petitioner must prove. As we previously explained, due process requires that when "the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." ***Steven V.***, 271 Wis. 2d 1, ¶23 (quoting ***Santosky***, 455 U.S. at 753-54). These procedures include providing a hearing, prescribing a petitioner's burden of proof as "clear and convincing evidence," ***id.***, and providing fair notice of any substantive change to a parent's conduct that could lead to a TPR, *see **Patricia A.P.***, 195 Wis. 2d at 863. Outside of providing these procedures, however, the legislature unquestionably has the prerogative to determine the grounds of unfitness upon which to initiate TPR proceedings. *See supra*, ¶¶24-25; *cf. **Brown Cty. v. Shannon R.***, 2005 WI 60, ¶60, 286 Wis. 2d 278, 706 N.W.2d 269 ("The State has an urgent interest in a termination of parental rights proceeding to protect the welfare of the children.").

¶38 Here, the legislature changed the elements a TPR petitioner must prove—not the procedural requirements for initiating a TPR case—when it amended WIS. STAT. § 48.415(2)(a)3. Nothing in the plain language of the amended statute suggests a petitioner may not initiate a TPR case under the new statute when the case's underlying facts occurred before the statute was amended. Sophie's contrary assertion therefore fails.

¶39 Sophie additionally argues that use of the word "placed" in the amended version of WIS. STAT. § 48.415(2)(a)3. shows that the 15-out-of-22-month

timeframe begins with a CHIPS order that includes that timeframe's warning. The prior version of subdivision 3. read, in pertinent part, that a petitioner must prove "the child *has been outside* the home for a … period of 6 months" pursuant to a CHIPS order. (Emphasis added.) The amended version of subdivision 3. now provides that a petitioner must prove "the child has been *placed* outside the home for a … period of 6 months" pursuant to a CHIPS order. (Emphasis added.) Sophie maintains, for several reasons, that because the legislature modified subdivision 3. to include the verb "placed," "the most natural reading of the entire provision is that each subsequent use of the term 'placed' … is likewise modified by the term 'pursuant to an order listed under [subdivision] 1.'"—e.g., a CHIPS order including the elements of the amended version of the continuing CHIPS ground. We are not persuaded.

¶40    All of Sophie's arguments in this regard rely upon a faulty premise. Namely, she contends the amended version of WIS. STAT. § 48.415(2)(a) prohibits a TPR petitioner from relying on a valid CHIPS order issued prior to the amended version of § 48.415(2)(a), even if that prior order contained the requisite notice generally stating the parent's parental rights may be terminated under the continuing CHIPS ground but not specifically containing notice of the amended version's 15-out-of-22-month timeframe. This premise, as we explain above, is erroneous. For this reason alone, Sophie's remaining statutory interpretation arguments lack merit.

¶41    In any event, there is no reasonable basis to interpret "placed" and "pursuant to an order listed under subd. 1." as operating differently than the phrase "has been outside the home" operated with "pursuant to such orders" under the prior

21

version.[17] All the relevant language does—and has always done—is require that the child has been "placed outside the home" or has been "outside the home" pursuant to a CHIPS order. Indeed, the orders to which the continuing CHIPS ground refers are those that "place" the child outside the home. In all, Sophie reads too much into the legislature's insertion of "placed" in WIS. STAT. § 48.415(2)(a)3.

---

[17] "Placed" operates as a passive-voice verb, in which the entity doing the placing is unstated in the sentence. Clearly, that entity is a governmental agency or court, as children do not "place" themselves outside of their parents' homes.

**CONCLUSION**

¶42    We conclude, as matter of statutory construction, that nothing within the prior or amended version of WIS. STAT. § 48.415(2)(a) prohibits the Department from pursuing a TPR against Sophie using the elements for the continuing CHIPS ground found in the amended version of the statute.  Accordingly, the circuit court did not err by determining that Sophie's TPR proceedings must employ the current, amended version of § 48.415(2)(a).  We also disagree with Sophie that applying the amended version of the statute to her circumstances violates her constitutional rights to due process.  We therefore affirm the order of the circuit court.

*By the Court.*—Order affirmed.