**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 5, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1950**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022TP86

**IN COURT OF APPEALS
DISTRICT I**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO H. C., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

H. C.,

      RESPONDENT-APPELLANT.

      APPEAL from an order of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

¶1     COLÓN, J.[1]  H.C. appeals from an order of the circuit court terminating her parental rights to her son, John.[2]  On appeal, H.C. argues that WIS. STAT. § 48.426(3) is unconstitutional on its face because it does not define a specific burden of proof for the State at the dispositional phase of a proceeding to terminate parental rights.  She further argues that the circuit court erroneously exercised its discretion following the disposition hearing when it found that it was in her son's best interest to terminate her parental rights.

¶2     Upon review, we conclude that due process requires that the best interest of the child be proven by a preponderance of the evidence at the dispositional phase.  However, we also conclude that the circuit court did not erroneously exercise its discretion when it found that it was in John's best interest to terminate H.C.'s parental rights.  Thus, for the reasons set forth below, we affirm the circuit court's order terminating H.C.'s parental rights to her son.

## BACKGROUND

¶3     On May 3, 2022, the State filed a petition to terminate H.C.'s rights to her son, John, and alleged both continuing CHIPS[3] and failure to assume parental responsibility as grounds for termination.[4]

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] As a result of H.C. and her son having the same initials, we refer to H.C. using her initials and to her son using the pseudonym used by the parties.  *See* WIS. STAT. RULE 809.19(1)(g).

[3] CHIPS is a commonly used acronym for child in need of protection or services.  *See Eau Claire Cnty. DHS v. S.E.*, 2020 WI App 39, ¶1 n.3, 392 Wis. 2d 726, 946 N.W.2d 155.

[4] The petition further sought to terminate the rights of John's father, who remains unknown.  The father's rights are not at issue in this appeal.

¶4      As described in the petition, H.C. lived in a group home with John, and their whereabouts were frequently unknown.  When they would return to the group home, H.C. would no longer have certain items that were provided to her for John's care, such as bottles, pacifiers, and a stroller, and H.C. would disclose that she spent the night at a "flop house" or an abandoned house.  H.C. also lacked an understanding of how to care for John and his medical needs, and staff took John to the emergency room on at least one occasion.[5]  H.C. additionally failed to address concerns related to drugs and alcohol, failed to address concerns related to H.C.'s mental health, and generally failed to participate in any recommended services to have John returned to her care.  H.C. was also sporadic with her visitation and involvement in John's life following his removal from her care.

¶5      On January 23, 2023, H.C. pled no contest to the continuing CHIPS ground alleged in the petition.  The case proceeded to a hearing on the grounds and the disposition on June 5, 2023.  At the hearing, the former and current case managers and John's foster mother testified.  The circuit court also took judicial notice of the report prepared by one of H.C.'s case managers and the documents from the CHIPS proceedings.  H.C. did not personally attend the hearing.

¶6      The testimony at the hearing established that John was found to be a child in need of protection or services on September 15, 2021, and the court entered a CHIPS order containing conditions for H.C. to meet to have John returned to her care.  Since the time John was removed from H.C.'s care, H.C.'s

---

[5] Indeed, John had several diagnoses, including global development delays, dysplasia, optic nerve pallor, failure to thrive, growth delay, mycrocephaly, congenital cysts consistent with prenatal stroke, and autism disorder.  John also required regular weight checks that H.C. failed to consistently attend.

visits were "sporadic" and remained supervised, and H.C. had "sporadic" contact with John's foster parents. H.C. also failed to complete any of the conditions to have John returned to her care.

¶7 The testimony further established that John had been in the same foster placement "[f]or about a year" and that his current placement was an adoptive resource for him.[6] John initially would not let his foster family interact with or touch him, but he had adjusted well to the point where he eventually let his foster mother hold him and "interact with him completely." John's medical and behavioral conditions also improved. In particular, his self-abusive behaviors related to his autism were improving, he was working on eating certain foods such as oatmeal and blueberries, and he was working on standing.

¶8 Additionally, the witnesses testified that, as a result of his conditions, John could not understand the termination proceedings or adoption, but the witnesses still believed that he would not be harmed by severing the legal relationship with H.C. In fact, John would be able to enter into a more stable and permanent family relationship if H.C.'s parental rights were terminated because his placement, where he was receiving the care he needed, would move from long-term to permanent, and it was generally considered beneficial to close a CHIPS case for a child who is in a safe and stable environment rather than have the case "linger" until the child reaches the age of eighteen.

¶9 The circuit court found that it was in John's best interest to terminate H.C.'s parental rights. In reaching its decision, the circuit court found that John's

---

[6] John spent "roughly two years" with H.C. before being removed from her care, and he had been out of the home for at least another two years at the time of the hearing.

foster mother "would keep him and take care of him and love him and continue to do things to improve his life, to the extent it can be," even if John remained in foster care.

¶10    The circuit court also evaluated the factors found in WIS. STAT. § 48.426(3) and found that they generally weighed in favor of terminating H.C.'s parental rights.  As to the first factor, the circuit court found that "the likelihood of adoption after termination is pretty certain here."  As to the second factor, the circuit court observed "there's substantial physical health issues [and] emotional issues," but John's foster mother was "aware of all this … and nothing about his health, physical health, behavioral health, emotional health, is in any way a bar to adoption if termination were to go through."  The circuit court addressed the third factor saying that there has not been "any testimony at all about maternal family members, … so he certainly does not have any relationship whatsoever with extended maternal relatives."  In regard to John's relationship with H.C., the circuit court found "there is no way under everything I've heard here, that we could call their relationship substantial" and "it's highly unlikely that there will be any sort of visitation or contact between [H.C.] and [John]."

¶11    The circuit court continued by finding that the fourth factor was "neutral" because John was only five years old and "cannot articulate any issues of any sort that we could even analyze under the fourth factor here."  However, the circuit court further found under the fifth factor that John had been separated from H.C. for a "substantial" portion of his life, which "[i]t's been close to 60% of [John]'s life."

¶12    Overall, the circuit court found that the third, fifth, and sixth factors weighed heavily in favor of termination and the third and the sixth factors "are the ones that come to the forefront." The circuit court then concluded saying:

> I do think that unquestionably, termination of parental rights of [H.C.] … is in [John]'s best interest under [WIS. STAT. §] 48.427(3). And if there were a civil burden of proof that the State had to meet in this case such as preponderance or even clear and convincing evidence, the State has certainly met those two burdens here, and gone beyond them, certainly. It's really an overwhelming situation.

¶13    H.C. now appeals.

## DISCUSSION

¶14    "Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights." *Steven V. v. Kelley H.*, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856. In the first phase, called the "grounds" phase, "the petitioner must prove by clear and convincing evidence" that at least one of the twelve grounds enumerated in WIS. STAT. § 48.415 exists. *Steven V.*, 271 Wis. 2d 1, ¶¶24-25. If grounds exist, the court must find the parent unfit, and the proceedings move to the second phase. WIS. STAT. § 48.424(4); *Steven V.*, 271 Wis. 2d 1, ¶¶25-26. In the second phase, often referred to as the "dispositional phase," the court must decide if it is in the child's best interest that "the parent's rights be permanently extinguished." *Steven V.*, 271 Wis. 2d 1, ¶¶26-27. At the disposition hearing, the court may enter an order terminating a parent's rights or dismiss the petition. *Sheboygan Cnty. DHHS v. Julie A.B.*, 2002 WI 95, ¶28, 255 Wis. 2d 170, 648 N.W.2d 402.

¶15    On appeal, H.C. raises two main arguments related to the second phase of the proceedings. First, she argues that WIS. STAT. § 48.426 is facially

unconstitutional because it does not define a burden of proof for the State at the dispositional phase of a proceeding to terminate parental rights. Second, she argues that the circuit court erroneously exercised its discretion when it found that it was in her son's best interest to terminate her parental rights. We address each argument in turn.

### I. Whether due process requires a burden of proof at the disposition

¶16 H.C. argues that WIS. STAT. § 48.426 is facially unconstitutional because it does not define a burden of proof for the State to meet at the disposition hearing for a proceeding to terminate parental rights. Specifically, H.C. cites to *Santosky v. Kramer*, 455 U.S. 745 (1982), and argues that procedural due process requires the State to prove by clear and convincing evidence that termination is in the best interest of the child.

¶17 On the other hand, the State argues that H.C.'s argument ignores the process leading up to the dispositional phase and the plethora of rights and procedures afforded to the parent prior to the dispositional phase. *See Julie A.B.*, 255 Wis. 2d 170, ¶24 (describing that "the burden is on the government, and the parent enjoys a full complement of procedural rights" during the grounds phase). The State argues that, considering these rights and processes, WIS. STAT. § 48.426 is constitutional and compliant with the requirements of due process and *Santosky*.

¶18 The State further argues that placing a burden of proof on the State at the disposition ignores the structure of the disposition and the determination of what is in the best interest of the child. The State contends that the disposition is structured to allow the circuit court to receive and consider as much information as possible in determining the child's best interest and that all parties are invited to

present evidence to support what each party deems to be in the best interest of the child. *See* WIS. STAT. § 48.427(1) ("[A]ny party may present evidence[.]"). Placing a burden solely on the State, then, would be imprudent as the burden of proving what is in the best interest of the child is shared by all parties at the disposition and a burden on the State would limit the information received by the circuit court.

¶19    Taking a third approach, the guardian ad litem (GAL) argues that a preponderance of the evidence burden of proof should be applied at the disposition hearing.[7]  In making this argument, the GAL contends that the disposition is a proceeding that is different in kind from the grounds phase where the State is directly pitted against the parent.  Rather, the GAL compares the disposition hearing to a court trial that provides all parties the opportunity to call witnesses, present evidence, and make arguments to establish their respective positions. Thus, the GAL maintains that a preponderance of the evidence standard would be appropriate at the disposition.

¶20    Having considered the arguments of the parties, we conclude that the appropriate burden of proof at the dispositional phase is the preponderance of the evidence.  Due process, while it does not require proof of a child's best interest by clear and convincing evidence, does require, at a minimum, proof of a child's best interest by a preponderance of the evidence.  Therefore, we conclude that WIS.

---

[7] The GAL also argues that a clear and convincing evidence burden of proof could be applied but nevertheless recognizes that it is not constitutionally required under *Santosky v. Kramer*, 455 U.S. 745 (1982).  Overall, the GAL simply requests that a burden of proof be applied for the orderly administration of justice.

STAT. § 48.426 requires proof of the child's best interest by a preponderance of the evidence to satisfy due process requirements.

¶21 "A parent's interest in the parent-child relationship and in the care, custody, and management of his or her child is recognized as a fundamental liberty interest protected by the Fourteenth Amendment." *Steven V.*, 271 Wis. 2d 1, ¶22. "Thus, due process requires that '[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.'" *Id.*, ¶23 (alteration in original; citation omitted). As stated, H.C. argues here that WIS. STAT. § 48.426 does not satisfy the requirements of due process because it fails to hold the State to a burden of proof of clear and convincing evidence.

¶22 "Statutes are generally presumed constitutional," and H.C. as the challenger "must persuade us that the 'heavy burden' to overcome the presumption of constitutionality has been met, and that there is proof beyond a reasonable doubt that the statute is unconstitutional." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶46, 333 Wis. 2d 273, 797 N.W.2d 854. We review independently whether WIS. STAT. § 48.426 satisfies the requirements of due process. *See Kenosha Cnty. DHS v. Jodie W.*, 2006 WI 93, ¶22, 293 Wis. 2d 530, 716 N.W.2d 845.

¶23 In *Santosky*, the United States Supreme Court addressed whether a New York statute for a "permanent neglect proceeding" comparable to Wisconsin's termination of parental rights proceedings met the requirements of due process. *Santosky*, 455 U.S. at 747-48. Similar to our proceedings, the New York proceeding was bifurcated into a fact-finding hearing and disposition hearing. *Id.* at 748. The fact-finding hearing required the state to prove by "a fair preponderance of the evidence" that the child was "permanently neglected," and

the disposition hearing required the court to consider "what placement would serve the child's best interests." *Id.* The Court addressed the fair preponderance of the evidence standard applied at the fact-finding hearing and ultimately held that "due process requires that the [s]tate support its allegations by at least clear and convincing evidence." *Id.* at 747-48.

¶24 To reach its conclusion, the Court evaluated three factors from *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine "the nature of the process due in parental rights termination proceedings": "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky*, 455 U.S. at 754. Evaluating these three factors with respect to the New York statute, the Court described the private interest affected as "commanding," the risk of error "substantial," and the countervailing governmental interest "comparatively slight." *Id.* at 758. Thus, the Court reached the conclusion that a "fair preponderance of the evidence" standard is "inconsistent with due process." *Id.* With this framework in mind, we turn to our statute at issue here.

¶25 WISCONSIN STAT. § 48.426 sets forth the standards and factors that govern at the disposition, and the statute provides in full:

> (1) COURT CONSIDERATIONS. In making a decision about the appropriate disposition under s. 48.427, the court shall consider the standard and factors enumerated in this section and any report submitted by an agency under s. 48.425.
>
> (2) STANDARD. The best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings under this subchapter.
>
> (3) FACTORS. In considering the best interests of the child under this section the court shall consider but not be limited to the following:

(a) The likelihood of the child's adoption after termination.

(b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.

(c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.

(d) The wishes of the child.

(e) The duration of the separation of the parent from the child.

(f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

¶26     As the present dispute makes plain, WIS. STAT. § 48.426 is silent on the burden of proof applied at the disposition hearing. At first glance, *Santosky* appears to require a clear and convincing burden of proof at the disposition hearing. However, *Santosky* addressed a fact-finding hearing equivalent to our grounds phase of a termination of parental rights proceeding, and it did not address the dispositional phase of the proceedings. Nevertheless, we find *Santosky* instructive in this situation as *Santosky* spells out the "Supreme Court's three-part test for determining what process is constitutionally due in TPR cases." *See Steven V.*, 271 Wis. 2d 1, ¶40.

¶27     Turning to the first factor, the Court recognized in *Santosky* that the state, in a termination proceeding, seeks to end "a natural parent's 'desire for and right to the companionship, care, custody, and management of his or her children.'" *Santosky*, 455 U.S. at 758-59 (citation omitted). The Court, therefore, concluded that the parent's interest at stake was a commanding one. *Id.* at 759.

11

¶28    While the parent retains an interest at the dispositional phase that requires protection, we must also recognize that the parent's interest is the highest at the ground stage, not the disposition stage. *See Julie A.B.*, 255 Wis. 2d 170, ¶¶24, 28.   Rather, when the court reaches the second step of the termination proceeding, the parent's interest must also accommodate the best interest of the child as the paramount concern at the disposition. *See id.*, ¶30.  Indeed, the Court in *Santosky* recognized that "the child and his foster parents are also deeply interested in the outcome" of a termination proceeding and these interests compete with the interests of the parent at the dispositional phase of the proceedings. *Santosky*, 455 U.S. at 759-61; *see also Julie A.B.*, 255 Wis. 2d 170, ¶22 (stating that "other vital interests must be accommodated" in a termination proceeding). Thus, we consider that this factor strongly favors imposing a preponderance of the evidence burden of proof to accommodate the different vital interests at play in the dispositional phase.

¶29    As to the second factor, the Court in *Santosky* considered that the fact-finding phase was "an adversary contest" between the state and the natural parents, and "[a]t such a proceeding, numerous factors combine to magnify the risk of erroneous factfinding." *Id.* at 761-62.  Similar to the first factor, we recognize that the adversary contest between the parent and the State that drove the Court's analysis in *Santosky* survives the fact-finding hearing, but the risk of error is reduced given that the parent has been deemed unfit.

¶30    We must also account for the changed dynamics at the disposition hearing to recalibrate for the best interest of the child.  We must further account for the changed structure because, in contrast to the fact-finding hearing, "[a]ny party may present evidence relevant to the issue of disposition, including expert testimony, and may make alternative dispositional recommendations to the court."

WIS. STAT. § 48.427(1). Furthermore, "the court 'should welcome' any evidence relevant to the issue of disposition[.]" **Steven V.**, 271 Wis. 2d 1, ¶27 (citation omitted). Thus, we consider that this factor weighs in favor of applying a preponderance of the evidence standard at the dispositional phase.

¶31     Under the third and last factor, the Court in **Santosky** recognized "[t]wo state interests are at stake in parental rights termination proceedings—a *parens patriae* interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." **Santosky**, 455 U.S. at 766.

¶32     As with the first two factors, we consider that preserving and promoting the welfare of the child changes at the dispositional phase after a parent has been found unfit. "As *parens patriae*, the State's goal is to provide the child with a permanent home." **Id.** at 766. "The State's interest in finding the child an alternative permanent home arises only 'when it is *clear* that the natural parent cannot or will not provide a normal family home for the child.'" **Id.** at 767 (citation omitted). By the time the proceedings reach the dispositional phase, the State's interest in finding an alternative permanent home for the child has risen given that the parent has been deemed unfit.

¶33     Turning to any fiscal and administrative considerations, we observe that a preponderance of the evidence burden of proof would not impose substantial fiscal burdens upon the State, nor would such a burden of proof "create any real administrative burdens for the State's factfinders." **Id.** at 767-68. As a practical matter, the State is already being held to a burden of proof as evident by these very proceedings where the circuit court stated at the disposition hearing, "And if there were a civil burden of proof that the State had to meet in this case such as

preponderance or even clear and convincing evidence, the State has certainly met those two burdens here, and gone beyond them, certainly." Therefore, we consider that the third factor weighs in favor of imposing a preponderance of the evidence burden of proof at the time of disposition.

¶34 Having considered all three factors, we therefore conclude that due process requires that the best interest of the child be proven by a preponderance of the evidence at the dispositional phase of a proceeding to terminate parental rights.

¶35 In reaching our conclusion, we note that this burden is not solely placed on the State. Rather, to account for the ability of all parties to present evidence and arguments at the disposition, we consider it a common burden of proof wherein each party bears the burden to show by a preponderance of the evidence that its desired outcome—be it termination or preservation of parental rights—is in the best interest of the child.

¶36 We further note that applying a burden of proof does not upset the circuit court's ultimate discretion in the decision to terminate parental rights. *See* *State v. Margaret H.*, 2000 WI 42, ¶¶27, 32, 234 Wis. 2d 606, 610 N.W.2d 475. Rather, we consider that it remains within the circuit court's discretion to determine the best interest of the child.[8]

---

[8] We observe that a similar question was addressed in *In re D.T.*, 818 N.E.2d 1214 (Ill. 2004). In *D.T.*, the court explained that "sound discretion" was not a burden of proof, and after conducting an analysis of *Santosky*, the court concluded that due process required imposing a preponderance of the evidence burden of proof at the dispositional phase. *D.T.*, 818 N.E.2d at 1221-23, 1228.

**II. Whether the circuit court erroneously exercised its discretion at the disposition hearing**

¶37    H.C. next argues that the circuit court erroneously exercised its discretion when it found that it was in John's best interest to terminate H.C.'s parental rights.  We disagree.

¶38    It is well-settled that the ultimate decision to terminate parental rights is committed to the circuit court's discretion.  *Id.*  This court will not overturn a discretionary decision of the circuit court if it applied a correct standard of law to the facts and reached a conclusion that a reasonable judge could reach.  *Id.*, ¶32.

¶39    As previously described above, WIS. STAT. § 48.426 provides that the best interest of the child "shall be the prevailing factor considered by the court" and the court "shall consider" the six factors in evaluating the best interest of the child.

¶40    At the time of the disposition, the circuit court listed each factor found in WIS. STAT. § 48.426(3) on the record, assigned a weight to each factor, and provided factual support from the testimony and other evidence introduced at the disposition to support its analysis of each factor.  Importantly, the circuit court found, "[I]f there were a civil burden of proof that the State had to meet in this case such as preponderance or even clear and convincing evidence, the State has certainly met those two burdens here, and gone beyond them, certainly.  It's really an overwhelming situation."  This court will not overturn the circuit court's findings at the disposition based on the record before us.

¶41    Nevertheless, H.C. argues that termination is inappropriate in John's case because, as a result of his medical conditions, John is unable to understand

15

and appreciate the difference between remaining under a CHIPS order or being adopted, with the result being that termination ultimately provides no benefit to him. We disagree that these considerations render John's case any different from that of any other child and require a conclusion that the circuit court erroneously exercised its discretion when it found it was in John's best interest to terminate H.C.'s parental rights.

¶42 To be sure, John suffers from a number of medical conditions that, for example, have resulted in his confinement to a wheelchair, have left him in need of a feeding tube and on a liquid diet, and have left him nonverbal. However, as the circuit court recognized, the legislature has provided an overall purpose in these proceedings to provide stability and permanency to all children. In fact, the stated purpose of "The Children's Code" provides that it "shall be liberally construed to effectuate the following express legislative purposes," including "[t]o promote the adoption of children into safe and stable families rather than allowing children to remain in the impermanence of foster care" and "[t]o allow for the termination of parental rights at the earliest possible time after rehabilitation and reunification efforts are discontinued." WIS. STAT. § 48.01(1)(gg), (gr). As we see it, John should be treated no differently in these proceedings simply because he suffers from a variety of medical conditions that have left him unable to appreciate and understand the proceedings with a capacity that other children may have.

¶43 Consequently, we reject H.C.'s argument that the circuit court erroneously exercised its discretion when it found that it was in John's best interest to terminate her parental rights.

**CONCLUSION**

¶44     This court concludes that due process requires that a burden of proof be specified at the dispositional phase of a proceeding to terminate parental rights, and we conclude that, under WIS. STAT. § 48.426, the best interest of the child must be proven by a preponderance of the evidence.  Nevertheless, this court also concludes that the circuit court did not erroneously exercise its discretion at the disposition hearing when it found that it was in John's best interest to terminate the parental rights of his mother, H.C.  Accordingly, this court affirms the circuit court's order terminating H.C.'s parental rights to her son.

        *By the Court.*—Order affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.